# In the United States Court of Federal Claims

|  |  |
|---|---|
| **CLUB CAR WASH STILLWATER 6TH, LLC**, *et al.*,<br><br>     *Plaintiffs,*<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>     *Defendant.* | No. 24-1240<br>(Filed: April 1, 2026) |

*Meghan S. Largent*, *Lindsay S.C. Brinton*, *Michael Armstrong*, *Marlee L. Rowe*, Lewis Rice, LLC, St. Louis, Missouri, for Plaintiffs.

*Alexis E. Smith*, Trial Attorney, *Adam R.F. Gustafson*, Principal Deputy Assistant Attorney General, Environment & Natural Resources Division, Washington, DC, United States Department of Justice, for Defendant.

## OPINION AND ORDER

**HADJI**, *Judge*.

Plaintiffs filed this action seeking just compensation under the Fifth Amendment for the Government's alleged appropriation of their land for recreational trail use under the National Trail Systems Act, 16 U.S.C. §§ 1241-51 (Trails Act). *See generally* ECF 13. The parties have stipulated for summary judgment purposes that Plaintiffs own land adjacent to the relevant rail corridor, *see* ECF 23 at 1-3, and the current question is whether Plaintiffs have a property interest in the land *under* the corridor. Before the Court are Plaintiffs' Motion for Partial Summary Judgment (ECF 29) and the Government's Cross-Motion for Summary Judgment (ECF 33). For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Cross-Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This action is brought by Plaintiffs who own various parcels of land adjacent to a 3.2-mile railroad corridor in Payne County, Oklahoma. ECF 23 at 1; ECF 29 at 9. In 1899, the Eastern Oklahoma Railway Company (the Original Railroad) acquired property interests in the corridor from individual landowners, as described below. *See* ECF 23 at 2-3; ECF 29-4 at 3; ECF 29-5 at 3; ECF 29-6 at 3; ECF 29-7 at 3; ECF 29-8 at 2. In the early

1900s, the Original Railroad constructed a rail line in that corridor. *See* ECF 29-14 at 11. Over the years, the rail line has had several different owners and operators. *See, e.g., id.* In 1998, the State of Oklahoma ultimately acquired the rail line through the Oklahoma Department of Transportation (ODOT). *Id.* At that time, Stillwater Central Railroad began operating on the line. *Id.*

In May 2024, ODOT and the Stillwater Central Railroad filed a Joint Notice of Exemption with the Surface Transportation Board (STB), seeking permission for ODOT to abandon—and for Stillwater Central to discontinue service over—the rail line. *See generally* ECF 33-1. The City of Stillwater then requested a Notice of Interim Trail Use or Abandonment (NITU), seeking to establish interim trail use and railbanking on the line. *See generally* ECF 29-15. The STB issued the NITU in August 2024. *See generally* ECF 29-17. The NITU granted the City of Stillwater and ODOT a period of one year to negotiate transfer of the line to the City of Stillwater for interim trail use. *Id.* at 4. The ODOT and the City of Stillwater entered into a trail use agreement and notified the STB on July 29, 2025. *See* ECF 32.

On August 13, 2024, Plaintiffs filed this action, alleging that the NITU caused a taking of their property. ECF 1 at 7-8. Plaintiffs amended their Complaint on December 4, 2024. ECF 13. For purposes of summary judgment only, the parties agree that: (1) Plaintiffs owned the property identified in the table below at the time of the NITU; (2) each of the parcels listed are physically adjacent to the railroad corridor subject to the NITU; and (3) the conveyances listed identify the source conveyances by which the Original Railroad acquired its interests in the segment of the railroad corridor adjacent to each Plaintiff's property:

| Plaintiff(s) | Payne County Parcel Number | Original Conveyance[1] | Pl. Ex. |
|---|---|---|---|
| Club Car Wash Stillwater 6th, LLC | 600010532 | David Husband Bk Misc. 5, Pg 602, Condemnation, report dated 11/25/1899, recorded 1/7/1905 | D |
| Roger P. Dilbeck and Suzanne Grooms | 600090640 | Frank Wittum, | E |

---

[1] The information in this table is drawn from the parties' joint stipulations for purposes of summary judgment and the referenced exhibits, which are the stipulated source conveyances. In their joint stipulations, the parties incorrectly listed the date of the Wittum Condemnation as "01/17/1905," when that condemnation was recorded on January 7, 1905. *See* ECF 23 at 2; ECF 29-5 at 3. The parties also incorrectly stipulated to the S.E. Warranty Deed being executed on "11/25/1899," when the deed lists an execution date of November 22, 1899. *See* ECF 23 at 2; ECF 29-8 at 2. For accuracy, these two dates are listed as they appear in the referenced exhibits, not the parties' summary table. *See* ECF 29-5 at 3; ECF 29-8 at 2. For completeness, this table includes both the report and recording dates for each condemnation; these dates are drawn directly from the referenced exhibits. *See* ECF 29-4; ECF 29-5; ECF 29-6; ECF 29-7.

| | | Bk Misc. 5, Pg 618, Condemnation, report dated 11/25/1899, recorded 1/7/1905 | |
|---|---|---|---|
| Montez L. Elston | 600083683 | Chas. Donart, Bk Misc. 7, Pg 200,[2] Condemnation, report dated 12/12/1899, recorded 1/7/1905 | F |
| Mark Atkinson, Laverne C. Atkinson, and Michael Dean Atkinson, Co-Trustees or Their Successors in Trust, of The Mark and LaVerne C. Atkinson Family Trust | 600013443 | S.E. Morris, Bk Misc. 5, Pg 616, Condemnation, report dated 11/25/1899, recorded 1/7/1905  Warranty Deed: S.E. Morris, executed 11/22/1899, Bk 17, page 388. | G |
| Rachel L. Kahle, Trustee of The Rachel L. Kahle Revocable Living Trust | 600013446 | | |
| Roger Allen Speer and Shirley Denise Speer, Co-Trustees of The Speer Family Trust | 600013465 | | H |
| William G. and Viola L. Petermann, Co-Trustees of The William G. and Viola L. Petermann Trust Under Revocable Trust Agreement | 600013539 | | |
| Axela Alexandra Perkins Group LP | 600047806 | | |

ECF 23 at 2-3; *see also* ECF 29 at 10, 13; ECF 33 at 13. Plaintiffs concede—and the Government does not dispute—that ODOT's ownership of the line as of the date of the NITU was whatever interest was acquired by the Original Railroad through the conveyances listed above. ECF 29 at 13; *see generally* ECF 33 (only advancing arguments concerning the source conveyances).

## LEGAL STANDARD

Rule 56(a) of the United States Court of Federal Claims permits summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "[A]ll evidence must be viewed in the light

---

[2] The parties' joint stipulation table incorrectly listed the page number as "260," when the exhibit shows the condemnation report begins on page 200. *See* ECF 23 at 3; ECF 29-6 at 1 (upper left-hand corner).

[3] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis omitted). A fact is material if it "might affect the outcome of the suit," and a dispute as to a material fact is genuine if "the evidence is such that a reasonable [trier of fact] could [rule in favor of] the nonmoving party." *Id*. at 248. Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* Though the moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), once this burden is met, the onus shifts to the non-movant to point to an evidentiary conflict on the record; mere denials or conclusory statements are insufficient to defeat summary judgment. *See Anderson*, 477 U.S. at 256.

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex*, 477 U.S at 322. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

"With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other." *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus*, 812 F.2d at 1391.

## DISCUSSION

To establish a Fifth Amendment taking, a plaintiff must possess a protectable property interest in the subject of the taking. *Palmyra Pac. Seafoods, L.L.C. v. United States,* 561 F.3d 1361, 1364 (Fed. Cir. 2009). In Trails Act cases, the determinative issues for takings liability are:

> (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;
>
> (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and
>
> (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips Co. v. United States,* 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996)).

Only the first factor is currently before the Court. *See* ECF 29 at 15; ECF 33 at 13. Thus, the sole issue here is whether the Original Railroad, and subsequently ODOT, obtained easements or fee simple title in the land subject to the NITU. In making this determination, the Court looks to state law. *Castillo v. United States*, 952 F.3d 1311, 1319 (Fed. Cir. 2020). "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1359 (Fed. Cir. 2005) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)).

The parties agree that the resolution of this question turns on the conveyances through which the Original Railroad obtained its property interests from Plaintiffs' predecessors in title. *See* ECF 29 at 15-16; *see generally* ECF 33 (only advancing arguments concerning the source conveyances). If those conveyances conveyed fee simple title to the Original Railroad, then Plaintiffs no longer hold a property interest in the corridor that could have been affected by the NITU. *See Ellamae Phillips*, 564 F.3d at 1373.

## I.    Oklahoma Supreme Court's Presumption of Easement

The parties are in agreement that railroads *could* obtain both easements and fee simple estates in the Oklahoma Territory. *See* ECF 29 at 16-18; ECF 33 at 14-16. But they disagree about which interpretive rules the Oklahoma Supreme Court applies to condemnation proceedings involving railroads. The Government relies on an early case, *Jones*, for the proposition that this Court should look for whether a condemnation reflects intent to take a lesser estate than fee simple. *See* ECF 33 at 23-24 (citing *Jones v. Oklahoma City*, 137 P.2d 233, 236 (Okla. 1941)). Plaintiffs rely on later cases for the contrary proposition that the Court should look for whether a condemnation reflects clear intent to take fee simple. ECF 29 at 21 (citing *Chi., Rock Island, & Pac. R.R. v. Morgan*, 421 P.2d

268, 272 (Okla. 1966)). Because the Oklahoma Supreme Court has equivocated on this point and because this appears to be the first Oklahoma rails-to-trails case in the Court of Federal Claims, settlement of this issue requires careful summary of several successive Oklahoma Supreme Court cases.

Based on the briefing presented, which is consistent with the Court's research, the Oklahoma Supreme Court first evaluated the quantum of estate conveyed by pre-statehood railroad condemnation proceedings in *Jones v. Oklahoma City*, 137 P.2d 233 (Okla. 1941). The initial *Jones* opinion concluded that the relevant statute—Stat. of Okla. Terr. c. 17, art. 9, § 28, p. 256 (1893)—authorized railroads to acquire fee simple via condemnation, without evaluating the details of the particular condemnation. *Jones*, 137 P.2d at 235-36. Later, the *Jones* Court issued a supplemental opinion analyzing the specific language of the condemnation proceeding at issue to determine the quantum of estate conveyed. *Id.* at 237. The court noted that the petition which initiated the condemnation proceedings sought "all the right, title, and interest" of one of the owners. *Id.* Then, the court noted that the words "appropriation," "take," and "condemn" were used in the proceedings. *Id.* Finally, the court concluded by stating the following:

> The law in effect at the time the property was condemned authorized the railroad to acquire a full fee simple title. We find nothing in the condemnation proceedings indicating an intention on the part of the condemner to take any lesser estate in the property condemned, and we therefore conclude that the parties intended to take such title as they were authorized and empowered to take under the applicable statute. We therefore hold that the title taken was a full fee simple title.

*Id.* at 238. It is on this reasoning that the Government principally relies for its argument that this Court should find a fee simple estate was conveyed unless there is a clear intent to convey a lesser estate. *See* ECF 33 at 23.

About ten years after *Jones*, the Oklahoma Supreme Court again confronted a pre-statehood condemnation in a quiet title dispute over oil, gas, and mineral rights under a railroad corridor, in *Missouri, K. & T.R. Co. v. Miley*, 263 P.2d 415 (Okla. 1953). In *Miley*, "[t]he sole question for determination [was] the quantum of the estate acquired by the railroad company … by virtue of the condemnation proceedings in 1903." *Miley*, 263 P.2d at 417. That condemnation was conducted under the same statutory authority as the condemnations in both *Jones* and the instant case. *Id.* (citing Stat. of Okla. Terr. c. 17, art. 9 (1893) and noting the same applied in *Jones*); *see* ECF 29 at 17-18. The *Miley* Court agreed with *Jones* that the statute authorized, but did not require, the taking of fee simple and stated the following rule, quoted from a municipal takings case, *Martin v. City of Bethany*:

> In order for a fee simple title to be acquired under a statute conferring the power of eminent domain which does not

6

require that such a title be taken, the condemnation proceedings must clearly show an intention to acquire such a title and that such a title was in fact acquired under the condemnation decree.

*Miley*, 263 P.2d at 417 (quoting syllabus of *Martin v. City of Bethany*, 182 P.2d 517, 517 (Okla. 1947)). This is the rule quoted (twice, for emphasis) by Plaintiffs in the instant case. ECF 29 at 21.

The court then contrasted the language in the condemnations at issue in *Miley* (condemnation of "the right to the exclusive use and occupancy" of the land) and *Martin* (condemnation of "possession" of the land) against the language in *Jones* (condemnation of "the land"). *Id.* at 417. The *Miley* Court then looked to a voluntary conveyance case, *Aubert v. St. Louis-San Francisco Ry. Co.*, 251 P.2d 190 (Okla. 1952), for the following proposition:

If a deed to a railroad company contains nothing more than a grant of land, adequately described, the cases are practically unanimous in reaching the conclusion that it conveys a fee; but if such a deed contains nothing more than the grant of a right … they are equally unanimous in reaching the conclusion that it creates a mere easement over the land in question.

*Id.* at 417-18. The court held that "[t]hat same rule of construction is applicable to condemnation proceedings." *Id.* at 418. The court concluded, therefore, that the railroad had acquired only an easement on the relevant land because the condemnation had described the "right to the exclusive use and occupancy" of the land. *Id.* at 417-18.

The Oklahoma Supreme Court again confronted the method of interpreting a pre-statehood railroad condemnation in a quiet title action in *Oklahoma City-Ada-Atoka Railway Co. v. Rooker*, 355 P.2d 552 (Okla. 1960). There, the parties stipulated that the only issue on appeal was the railroad's legal interest obtained by a condemnation under the 1893 statutes. *Rooker*, 355 P.2d at 554. The *Rooker* Court approvingly cited the *Miley* rule, especially the proposition that "the *condemnation proceeding must clearly show an intention to acquire such a title and that such a title was in fact acquired under the condemnation decree.*" *Id.* (emphasis in original). The court also derived the proposition that "title acquired by condemnation proceedings will be generally confined or restricted to so much of the landowner's interest as the public need actually requires," from a municipal condemnation case. *Id.* (citing *City of Cushing v. Gillespie*, 256 P.2d 418, 418-19 (Okla. 1953)).

Applying the above principles to the condemnation before it, the *Rooker* Court concluded that the proceedings granted the railroad only a right of way across the land. *Id.* at 555. The court first pointed to the petition initiating the condemnation, which stated that "it is necessary for your applicant in the construction of said line of railroad to acquire a right of way consisting of" the relevant strip of land. *Id.* The order appointing the

7

commissions stated that they were appointed to "determine and appraise the compensation and damages by reason of the condemnation and appropriation of the land hereinbefore described, to be used for right-of-way and other railroad purposes." *Id.* The majority concluded by drawing the following contrast to *Jones*: "the proceedings in the Jones case clearly indicated an intention to take 'all the right, title and interest' of the condemnees, while in the instant case the proceedings indicated the purpose of taking only a 'right of way for railroad purposes.' The distinction is obvious." *Id.* at 556. Therefore, the court concluded that only an easement was condemned. *Id.*

*Rooker* also featured a special concurrence that warrants brief discussion. *See id.* at 556-57 (Irwin, J., concurring specially). Justice Irwin, joined by three other Justices, presented his view that the Oklahoma Supreme Court in *Miley* overruled the earlier *Jones* decision by implication. *Id.* According to the special concurrence, the *Jones* rule, which has courts look for intent to take a lesser estate, conflicts with the *Miley* rule, which has courts look for intent to take fee simple. *Id.* Because the special concurrence only garnered four votes on the nine-Justice court, it is not precedential. *See* Okla. Const. art. VII, § 5 ("concurrence of the majority … shall be necessary to decide any question"). But it provides this Court with an indication that the Oklahoma Supreme Court itself has struggled to reconcile some of its jurisprudence in this area, and it states a persuasive argument about these two facially inconsistent rules.

Finally, in another quiet title case, the Oklahoma Supreme Court interpreted a 1901 railroad condemnation proceeding very similar to the condemnations at issue in the instant case. *Chi., Rock Island, & Pac. R.R. v. Morgan*, 421 P.2d 268, 272 (Okla. 1966). The *Morgan* Court first dismissed concerns over procedural defects in the condemnation, concluding that the title conveyed was "the equivalent of a 'title by condemnation regularly acquired.'" *Id.* at 270-71. Turning to the question of the quantum of estate conveyed in the condemnation, the *Morgan* Court explicitly rejected the argument that the *Jones* rule controlled. *Id.* at 272. Specifically, the *Morgan* Court stated that "[a]n examination of the supplemental opinion as a whole discloses that the [*Jones*] court was simply discussing the facts in that case." *Id.* Instead, the court applied the *Miley* rule and "examine[d] the 1901 proceedings to see if they clearly show[ed] an intention to take a fee simple title." *Id.*

The *Morgan* Court acknowledged the following phrases cited by the party arguing that the condemnation conveyed fee simple:

- "strip of land two hundred feet wide"
- "containing in all Eight and Eight Hundredths acres"
- "will be taken and appropriated"
- "said real property"
- "appropriation of your land"
- "appropriation of so much of said real estate"
- "quantity of land"
- "real estate so taken"

*Id.* The court pointed out that these phrases had been sufficient in voluntary conveyance cases, but that the usual presumption of fee simple did not apply to railroad condemnations. *Id.* "Indeed, a 'presumption' to the opposite effect is created by the quoted rule from [*Miley*]." *Id.* The court then reasoned that "the terms 'taken', 'appropriated' and 'appropriation' may be applied either to an easement or an estate in fee simple." *Id.* at 273. Therefore, the court concluded that the terms quoted above did not "clearly show an intention to take a fee simple title," so the condemnation conveyed only an easement. *Id.*

In the present rails-to-trails case, it is the Court's role to anticipate how the Oklahoma Supreme Court would apply state law and its precedents to these facts. *See MicroStrategy Inc.*, 429 F.3d at 1359. From the above series of cases, the Court concludes that the Oklahoma Supreme Court would apply the rule in *Miley*, which presumes that railroad condemnation proceedings convey only an easement unless they "clearly show an intention to acquire [fee simple] title and that such a title was in fact acquired under the condemnation decree." *Morgan*, 421 P.2d at 272 (quoting *Miley*, 263 P.2d at 417). It is beyond this Court's authority to conclude that *Jones* is no longer good law, especially when that very proposition failed to obtain a majority in the Oklahoma Supreme Court. *See Rooker*, 355 P.2d at 556-57 (Irwin, J., concurring specially). But in each of the post-*Jones* cases detailed above, the Oklahoma Supreme Court did not apply the *Jones* rule and endeavored to cabin *Jones* to its facts. Therefore, this Court will apply the *Miley* rule, as elaborated and applied in subsequent cases, to interpret the condemnations at issue.

## II.     Husband, Wittum, and Donart Condemnations

The parties' central disagreement at this stage is about the quantum of estate conveyed to the Original Railroad by the various source conveyances. With regard to the Husband, Wittum, and Donart condemnations, the source of the disagreement is the dual meaning of the phrase "right of way," indicating either an easement or a fee simple estate. *See Aubert*, 207 Okla. at 540. The parties do not dispute any facts. And under Oklahoma law, contract interpretation is a question of law. *K & K Food Servs., Inc. v. S & H, Inc.*, 3 P.3d 705, 708 (Okla. 2000). Therefore, the Court finds that summary judgment is appropriate. Consistent with *Miley*, the Court will examine the language of each condemnation to determine whether there is a clear intent to convey fee simple. *See Miley*, 263 P.2d at 417.

Plaintiffs argue that the Husband, Wittum, and Donart condemnations all conveyed only an easement based on "multiple references to the interest being acquired as a 'right of way' 'over and across' the owner's land." ECF 29 at 23. The Government points to various words and phrases to argue for fee simple in the Husband and Wittum condemnations, including use of the term "real estate" in the phrase "the following described real estate situated in Payne County, Oklahoma Territory," "'appropriate' and 'real estate' when talking about the transfer of property and a 'strip of land' when referencing the metes and bounds of the 'land,'" and "the land taken." ECF 33 at 22. With regard to the Donart condemnation, the Government notes the following language: "condemn, appropriation, land, tract of land, strip of land, and land taken;" "to condemn a right of way for the said

plaintiff;" "inspect said real property and we did find that the said plaintiff The Eastern Oklahoma Railway Company has located its said line of railways over and across said described tract of land;" "the portion of said described land so appropriated." ECF 33 at 24-25. The Government also argues that the high amount of compensation in each condemnation supports its conclusion that a fee simple estate was conveyed. *See* ECF 33 at 23.

As discussed above, the *Morgan* Court concluded that a condemnation did not show clear intent to convey fee simple, even when it included the following language:

- "strip of land two hundred feet wide"
- "containing in all Eight and Eight Hundredths acres"
- "will be taken and appropriated"
- "said real property"
- "appropriation of your land"
- "appropriation of so much of said real estate"
- "quantity of land"
- "real estate so taken"

*Morgan*, 421 P.2d at 272. This conclusion is fatal to the Government's argument regarding the Husband, Wittum, and Donart condemnations. The Government's chosen phrases, reiterated above, are remarkably similar to the phrases that were insufficient in *Morgan* to defeat the presumption of easement. *Compare id.*, *with* ECF 33 at 24-25. Accordingly, the condemnations appear to convey only easements.

The Court is also not persuaded by the Government's one-line argument that the high damages in the condemnations defeat the presumption of easement. *See* ECF 33 at 23. First, the Government has not cited any legal authority for this proposition. Second, land valuation is dependent on many parameters that make comparison difficult, and the Government has presented no facts that enable the Court to determine whether a particular price for the land at issue is "high." *See* ECF 33 at 23. In *Jones*, the condemnation awarded approximately .34 acres for $220. *See Jones*, 137 P.2d at 237. That yields a rate of $647.06 per acre. In the present case, the condemnations convey the following: .83 acres for $83 ($100 per acre), ECF 29-4 at 3 (Husband); 4.09 acres for $205 ($50.12 per acre), ECF 29-5 at 3 (Wittum); and 7.9 acres for $510 ($64.56 per acre), ECF 29-6 at 3 (Donart). Even granting the Government the generous inference that the parcels in this case and the land in *Jones* are reasonable comps, these rates fall short of the rate in *Jones*. For these reasons, the Court will not go against the *Morgan* Court's on-point conclusions. Accordingly, the Court finds that the Husband, Wittum, and Donart condemnations all conveyed easements to the Original Railroad. Therefore, Plaintiffs are entitled to summary judgment as to ownership of the properties for which these were the source conveyances.

Because the Court concludes that the above conveyances granted only easements to the Original Railroad, the Court turns briefly to Oklahoma's centerline presumption. The Oklahoma Supreme Court adopted a Kansas rule (relating to lands abutting highways) and

10

extended it to railroads, such that the owners of land abutting railroad easements are presumed to own the land underlying that easement. *See Cuneo v. Champlin Refin. Co.*, 62 P.2d 82, 87-88 (Okla. 1936) (discussing *Bowers v. Atchison, T. & S.F. Ry. Co.*, 237 P. 913, 914 (Kan. 1925)). This presumption applies even when a conveyance does not include the land underlying the easement. *See Vaughn v. Fitzgerald*, 511 P.2d 1148, 1151 (Okla. Civ. App. 1973). The presumption is rebutted when the conveyance itself "expresse[s] [an] intention to exclude" the land underlying the easement, not merely if the conveyance "disclose[s] no intention to convey" that land. *Cuneo*, 62 P.2d at 87 (quoting *Bowers*, 237 P. at 914). In the present case, the Government has acknowledged that the centerline presumption could apply if the Original Railroad was granted only easements. *See* ECF 33 at 14 n.5. And the parties have stipulated that Plaintiffs own land adjacent to the railroad corridor. ECF 23 at 1. The Government has presented no alternative argument that any conveyance has expressed an intention to exclude the land underlying the rail corridor from Plaintiffs' properties. Accordingly, the Court concludes that Plaintiffs whose interests derive from the Husband, Wittum, and Donart Condemnations own their land up to the centerline of the rail corridor.

### III.    S.E. Morris Warranty Deed and Condemnation

The Court turns next to the several properties for which the parties have stipulated that the S.E. Morris Warranty Deed and S.E. Morris Condemnation are the original conveyances. *See* ECF 23 at 2. Because both conveyances apply to these properties, the Court will briefly summarize the facts underpinning these conveyances. The parties do not dispute these facts. Rather, they dispute the legal effect of these conveyances, making summary judgment appropriate for resolving this disputed question.

On November 22, 1899, landowner S.E. Morris executed a deed with the Eastern Oklahoma Railway Company, conveying a plot of land. *See* ECF 29-8 at 2. The deed indicates that the Original Railroad paid $175 for the land, and the deed was notarized by Notary Public C.W. McGraw. ECF 29-8 at 2. The parties and the Court agree that this deed appears to convey a fee simple estate. *See* ECF 34 at 28 (conceding that the S.E. Morris Warranty Deed "appears to convey a fee estate in the land"). The next day, a judge for the District Court of Payne County appointed three commissioners to condemn the land. *See* ECF 29-7 at 2-3. Two days after that, the commissioners produced a condemnation report regarding the same plot of land addressed in the deed, condemning that land from S.E. Morris to the Eastern Oklahoma Railway Company. *Compare* ECF 29-7 at 2-3, *with* ECF 29-8 at 2. The report reflects that the Original Railroad paid $140 for the land, and the report was notarized by Notary Public (and Deputy Clerk of the District Court of Payne County) C.W. McGraw. ECF 29-7 at 3. Because the operative language in the S.E. Morris Condemnation is very similar to the language in the Husband, Wittum, and Donart Condemnations, the Court concludes that it appears to grant the Original Railroad an easement over the land. Both the Warranty Deed and Condemnation were recorded years later on January 7, 1905—the Warranty Deed at 4:10 p.m. and the Condemnation, about an hour later, at 5:14 p.m. *See* ECF 29-8 at 2; ECF 29-7 at 2.

11

The 1893 Statutes of the Oklahoma Territory granted railroads limited eminent domain powers. A railroad could initiate condemnation proceedings—as in the case of the S.E. Morris Condemnation—when a landowner "refuse[d] to grant the right of way through and over his premises." C. 17, art. 9, § 28, p. 256. To initiate such proceedings, either party was required to petition the district judge and provide at least ten days' notice. *Id.* After the notice period, the judge would appoint three commissioners to inspect the property, evaluate damages, and issue a report memorializing their findings. *Id.* The report "must be filed and recorded by the clerk, and a certified copy thereof may be transmitted to the register of deeds of the county … where the land lies, to be by him filed and recorded … in the same manner and with like force and effect as is provided for the record of deeds." *Id.* at 256-57.

The parties disagree about which of the two S.E. Morris conveyances controls. Plaintiffs initially argue that the Condemnation controlled because it post-dated the Warranty Deed, which was not recorded until 1905, without citing case law to support that proposition. *See* ECF 29 at 18, n.5. In their Reply, Plaintiffs argue that the Condemnation, an *in rem* judgment, nullified the Warranty Deed. *See* ECF 34 at 29. Plaintiffs cite an Oklahoma Supreme Court case, *Harn v. State*, 87 P.2d 127 (Okla. 1939), for the proposition that the Condemnation took effect immediately. *See* ECF 34 at 29. In Plaintiffs' view, "[t]o hold otherwise would invite secret conveyances to upset judicial takings and defeat the finality on which condemnation must rest."[4] ECF 34 at 29. The Government argues that the Warranty Deed controls, relying on a statement in an Oklahoma Supreme Court case, *Oklahoma City v. Dobbins* (*Dobbins I*), 44 P.2d 148 (Okla. 1935), and the doctrine of merger. ECF 33 at 19-20. The *Dobbins I* Court, after concluding that a voluntary conveyance had granted fee simple, stated that condemnation proceedings could not "be used, within themselves, to limit the title conveyed by the execution of the deed." *Dobbins I*, 44 P.2d at 151. Plaintiffs counter that *Dobbins I* is factually distinguishable from the S.E. Morris conveyances, and that the relevant statement is dicta. ECF 34 at 30.

Though the facts of these dueling conveyances are unusual, the Court is persuaded that *Dobbins I* controls. The Oklahoma Supreme Court decided two *Dobbins* cases, first in 1935, and then in 1941. *Dobbins I*, 44 P.2d 148 (Okla. 1935); *Oklahoma City v. Dobbins* (*Dobbins II*), 117 P.2d 132 (Okla. 1941). In *Dobbins I*, Almira Wilkinson executed a fee simple deed with a railroad in 1900, and the court concluded that railroads in the Oklahoma Territory had statutory authority to acquire land in fee simple. *Dobbins I*, 44 P.2d at 150-51. At the conclusion of the opinion, the court made the following remark:

> Although condemnation proceedings were instituted and carried forward to the point of the report of the appraisers and the payment of the money to the clerk of the court, the conveyance was voluntary, and we cannot assent that they can

---

[4] To be clear, the Court emphasizes that there was nothing secret about the conveyances in this case. Both the Original Railroad and S.E. Morris were parties to both transactions, so this ruling does not implicate hypothetical other cases where a party lacks notice of one of the transactions.

> be used, within themselves, to limit the title conveyed by the execution of the deed above set forth.

*Dobbins I*, 44 P.2d at 151. In *Dobbins II*, the court provided the following additional context regarding this condemnation:

> The record shows that Almira Wilkerson [sic] on June 7, 1899, paid $100 for the lot, subject to the rights of the Choctaw Coal & Railway Company. The consideration of the deed to the Oklahoma City Terminal Railroad Company, made after her grantee had begun proceedings to condemn the south 100 feet of the lot, is shown as $375.

*Dobbins II*, 117 P.2d at 134. The natural reading of this passage is that the landowner executed the deed to the Oklahoma City Terminal Railroad Company ("her grantee") while its condemnation proceedings were still pending. The opinion does not explain how far the condemnation proceedings had progressed at the time of deed execution, but the fact that the proceedings "had begun" would seem to indicate that notice had been given and either a report had not yet been issued or post-report objections were being considered.[5]

The present case fits squarely into the facts of *Dobbins I* and *II*. Here, condemnation proceedings were initiated (i.e., notice was given) at least ten days before the condemnation report. *See* Stat. of Okla. Terr. c. 17, art. 9, § 28, p. 256 (1893). Before the report issued, the landowner and railroad executed a fee simple deed for that land. *See* ECF 29-8 at 2. Yet, just as in *Dobbins I*, "condemnation proceedings were instituted and carried forward to the point of the report of the appraisers and the payment of the money to the clerk of the court." *Dobbins I*, 44 P.2d at 151; *see* ECF 29-7 at 2-3. Therefore, the condemnation proceedings cannot "limit the title conveyed by the execution of the deed." *See Dobbins I*, 44 P.2d at 151. Plaintiffs argue that this conclusion from *Dobbins I* was dicta, but that does not change this Court's conclusion. ECF 34 at 30. When this Court applies state law, it endeavors to predict how the state's highest court would rule. Assuming *arguendo* that this statement in *Dobbins I* is dicta, this Court can still rely on the persuasive logic of the Oklahoma Supreme Court. *Cf. Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985) ("The sources of data which may guide our inquiry include the decisional law of the [state court] in analogous cases and relevant dicta in related cases").

---

[5] Plaintiffs' Reply states that "condemnation proceedings in [the *Dobbins* cases] predated the voluntary conveyance that ultimately controlled." ECF 34 at 30 (emphasis in original). In attempting to use that characterization to distinguish *Dobbins I* and *II* from the present case, Plaintiffs present an incorrect picture of the facts of the present case. As described above, Oklahoma Territory law required parties initiating condemnation proceedings to give ten days' notice. Stat. of Okla. Terr. c. 17, art. 9, § 28, p. 256 (1893). Therefore, the condemnation proceedings that led to the S.E. Morris Condemnation must have "begun" at least ten days before the commissioners' appointment on November 23, 1899, meaning the proceedings had been initiated no later than November 13, 1899—at least nine days before the Warranty Deed was executed. *See* ECF 29-7 at 2. That is a factual similarity between the *Dobbins* cases and the present case, not a distinction.

*Dobbins* aside, the same result follows from more basic principles of eminent domain law. The example of *Grand River Dam Authority v. Simpson*, a case not discussed by the parties, is a compelling illustration of the limits of condemnations. *Grand River Dam Auth. v. Simpson*, 136 P.2d 879 (Okla. 1943). In *Simpson*, the Dam Authority contracted to purchase land but refused to accept the sellers' offer of an encumbered deed. *Id.* at 880. The Authority initiated condemnation proceedings on the land, apparently in the hopes of obtaining unencumbered title to the land. *See id.* But when a jury assessed damages above the previous contract price, the Authority tried to have its cake and eat it too. *See id.* at 880-81. That is, the Authority was using the condemnation to quiet title to the land, while also arguing that the contract (1) was still in effect, (2) had granted the Authority equitable (rather than legal) title to the land, and (3) had fixed the agreed damages at $1050. *Id.* at 880-81. The Oklahoma Supreme Court rejected that argument, setting forth the following statements around the exercise of eminent domain authority:

> The institution of the proceeding admits the ownership. The condemnor cannot claim the beneficial ownership of land and at the same time assert that the condemnee claims all or some part of that interest; the proceeding in condemnation cannot be employed as a means to quiet title; and *the right to exercise the power of eminent domain is dependent entirely upon the ownership being in some one other than the condemnor*; the power to condemn negatives ownership in the condemnor.

*Id.* at 881 (emphasis added).

The reasoning of *Simpson*, applied to the present case, leads to the same outcome as in *Dobbins I*. Here, at the time the Original Railroad initiated condemnation proceedings, S.E. Morris owned the land and presumably refused to convey it to the railroad. *See* Stat. of Okla. Terr. c. 17, art. 9, § 28, p. 256 (1893) (allowing for condemnation only when a landowner "refuse[s] to grant the right of way through and over his premises"). Then, before condemnation proceedings concluded, the parties executed a fee simple deed, which documents that payment was exchanged. *See* ECF 29-8 at 2. At that point, the Original Railroad owned the land outright. Nonetheless, the commissioners still went through with the condemnation three days later. *See* ECF 29-7 at 2-3. Under *Simpson*, that was not a valid exercise of eminent domain because "the power of eminent domain is dependent entirely upon the ownership being in some one other than the condemnor." *Simpson*, 136 P.2d at 881. The Original Railroad could not condemn the land it had already acquired. In fact, S.E. Morris no longer had any interest to be condemned. *See Snethen v. Okla. State Union of Farmers Educ. & Co-op. Union of Am.*, 664 P.2d 377, 381 (Okla. 1983) ("It is a general rule of law that no one can confer or transfer a better title than that which he has…."). For this Court to allow the S.E. Morris Condemnation to supplant the Warranty Deed would be to substitute a potentially invalid conveyance of a lesser interest for the plainly valid conveyance of fee simple title. This Court will not do so.

14

Even if the condemnation in this case was valid, the Court is not persuaded that Plaintiffs' theory is supported by other property law principles. At base, Plaintiffs' theory requires this Court to hold that the Original Railroad paid twice for a lesser interest, and that now Plaintiffs are owed a third payment.[6] Plaintiffs' theory can only succeed if the condemnation proceedings acted with immediate, permanent effect to invalidate the Warranty Deed. *See* ECF 34 at 29. This Court cannot accept that view under the present circumstances. Plaintiffs argue that condemnations are *in rem*, and therefore "b[i]nd all interests in the land upon entry, recorded or not." ECF 34 at 29. This argument appears to flow from the Oklahoma Supreme Court's statement that a condemnation report "has the force and effect of a judgment in such case under the statute." *Harn v. State ex rel. Williamson*, 87 P.2d 127, 129 (Okla. 1939). But the *Harn* Court also characterized the effect of a condemnation report as follows: "The report, if allowed to stand without objection, serves to pass the use or title condemned." *Harn*, 87 P.2d at 129. And under the merger doctrine, "when a greater and a lesser estate coincide and meet in the same person, the lesser estate is absorbed or merged into the greater estate." *Bank of Wichitas v. Ledford*, 151 P.3d 103, 114 (Okla. 2006). These principles appear to be in conflict in this case.

The Court is persuaded that merger doctrine is a more appropriate framework for resolving the legal effect of these conveyances. That is, a railroad and landowner initiated condemnation proceedings, executed and paid consideration for a fee simple deed before the condemnation finished, and yet the condemnation proceedings still yielded a report pursuant to which the railroad paid damages. *See* ECF 29-8 at 2; ECF 29-7 at 2-3. These transactions occurred between the same parties, within mere days of each other, and in fact the same notary confirmed each transaction. *See* ECF 29-8 at 2; ECF 29-7 at 2-3. These circumstances—even construed in the light most favorable to Plaintiffs—present no issues relating to lack of notice, no concerns about bona fide subsequent purchasers, and no allegations that the proceedings were initiated for improper purposes (as in *Simpson*). Indeed, the case may come out very differently if any of those issues were presented. But under these narrow circumstances, the Court concludes that the condemnation proceedings cannot be fairly understood to invalidate the fee simple title voluntarily conveyed to the Original Railroad. *See Dobbins I*, 44 P.2d at 151; *accord Simpson*, 136 P.2d at 881 ("the proceeding in condemnation cannot be employed as a means to quiet title"). Accordingly, the S.E. Morris Warranty Deed controls, and the Court finds that the Original Railroad obtained a fee simple interest in the land. Therefore, the Government is entitled to summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on title issues (ECF 29) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion is **GRANTED** with respect to the claims arising from the Husband, Wittum, and Donart

---

[6] In this case, the stipulated conveyances reflect that the Original Railroad made two separate payments for this land. *See* ECF 29-7 at 3 ($140); ECF 29-8 at 2 ($175). Plaintiffs note there is no evidence of post-condemnation objections to undermine the Original Railroad's later payment of $140. *See* ECF 34 at 29.

Condemnations, and those claims may proceed to the next phase of litigation. Plaintiffs' Motion is otherwise **DENIED**. The Government's Cross-Motion for Summary Judgment (ECF 33) is **GRANTED IN PART** and **DENIED IN PART**. The Government's Motion is **GRANTED** with respect to the claims arising from the S.E. Morris Warranty Deed and Condemnation, and it is otherwise **DENIED**. The parties **SHALL FILE** a joint status report within 14 days of the publication of this opinion, including a proposal for further proceedings.

      **IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge